**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **COMPLAINT OF WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY, CIVIL AND MARITIME** | **CIVIL ACTION NO.: 17-12473-NMG** **IN ADMIRALTY** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER FOR DESTRUCTION AND/OR RETURN OF CERTAIN CONFIDENTIAL MATERIALS PRODUCED IN THE HMS CONSULTING SUBPOENA RESPONSE**

Now comes the plaintiff, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (hereinafter the "Steamship Authority"), in the above captioned civil action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and hereby submits its Memorandum in Support of Motion for Protective Order for Destruction and/or Return of Certain Confidential Materials Produced in the HMS Consulting Subpoena Response.

## <u>INTRODUCTION</u>

In this motion, Plaintiff seeks a Protective Order requiring the destruction and/or return of certain confidential interview notes of Steamship Authority employees and other stakeholders on the grounds that they are protected by the self-critical analysis privilege, the fair reporting privilege and because they contain information from private and confidential interviews.[1]  Because the foregoing protections apply, the Court should properly allow this

---

[1] This is only a portion of the HMS Consulting subpoena response.  The remainder of the materials will be subject to the Final Confidentiality Order once adopted by the Court following the briefing schedule.

motion and require the destruction of these materials (and certification thereof) by counsel for all Claimants pursuant to Fed.R.Civ.P. 26(b)(5)(B).

## **BACKGROUND**

The Steamship Authority is a quasi-public entity that provides passenger ferry service between Cape Cod and the islands of Nantucket and Martha's Vineyard.  It has eleven vessels and services approximately three million [3,000,000] passengers a year.

In the spring of 2018, the Steamship Authority experienced three blackouts, a grounding and a number of critical IT system outages.  This resulted in trip delays and cancellations together with perceived negative public relations.  In response to these problems unrelated to this case, the Steamship Authority commissioned the consulting firms HMS Consulting, Glosten and Rigor Analytics to perform a comprehensive review of Steamship Authority operations, with a focus on fleet maintenance, vessel operations, management structure, public communications and IT systems.  This comprehensive review culminated into a report published on December 13, 2018 (hereinafter the "Comprehensive Review").  The Comprehensive Review addresses these 2018 problems and suggests wholistic solutions to a myriad of Steamship Authority management practices.  The Comprehensive Review is in the _public domain_ and has received some media attention. *See Comprehensive Review attached hereto as Exhibit 1.*

While conducting the Comprehensive Review, HMS Consulting conducted a number of confidential interviews of Steamship Authority personnel, board members, officers and other persons.  All interviewees were advised that their interviews will be _confidential_ and that the substance of these interviews will not be revealed to any persons, including other Steamship Authority personnel.  *Exhibit 2, HMS Presentation at p. 4.*

Steamship Authority employees were further advised that their comments in the interviews will not be subject to any claims of retaliation:

> If any consultants asks to talk with you, please feel free to do so.  Robert Sylvia of Teamsters Union Local 59 will be accompanying them, so you can ask him for his advice and support at any time.  In addition, you will be able to talk with the consultants without any supervisors or management staff members present.  We also want to assure you that *you can say anything you want to the consultants without fear of retaliation.  Further we have been assured by HMS that, in their report, no names will be used and no individual will be directly quoted*.

**Exhibit 3, SSA Memorandum dated July 22, 2018 (underscoring our emphasis).**

Counsel for the claimants Marisa and Michael Green has subpoenaed and obtained the records of HMS Consulting that were generated in the course of preparing the Comprehensive Review.  HMS Consulting was under instructions from the Steamship Authority to provide these documents to the undersigned counsel for review prior to their distribution to claimants' counsel.  HMS Consulting did not abide by this request and the undersigned counsel did not have the opportunity to review the documents until they were provided to Greens' counsel (and thence to all other Claimants' counsel) on January 24, 2019.

The HMS Consulting subpoena response is presently subject to an interim emergency Protective Order from the Court while the parties file any potential objections to a proposed Confidentiality Order submitted by Plaintiff on March 8, 2019.  The Confidentiality Order, once approved, will govern assertions of claims of confidentiality with respect to all documents produced in the above captioned action, including the HMS Consulting subpoena response.  The Proposed Confidentiality Order concerns certain confidential documents and how they can be utilized in this Civil Action.

The HMS Consulting subpoena response includes notes from its confidential interviews that reveal the substance of individual comments linked to their names and positions at the Steamship Authority.  These interview notes are all contained within a digital file named "Recon Stakeholder Discussions."[2]  Because Steamship Authority employees were assured that their individual comments made during their interviews will remain confidential, Plaintiff respectfully moves for a Protective Order requiring the destruction and/or return of these materials together with a certification from counsel for all parties that they have properly done so.

## ARGUMENT

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is _relevant to any party's claim or defense_ and proportional to the needs of the case, considering the _importance of the issues at stake in the action_, the amount in controversy, the parties' relative access to relevant information, the parties' resources, _the importance of the discovery in resolving the issues,_ and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed.R.Civ.P. 26(b)(1) (underscoring our emphasis).  Additionally, Fed.R.Civ.P. 26(c)(1)(D) and (G) allows the Court discretion to issue a Protective Order "forbidding discovery into certain matters" and "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

"Under Rule 26, the trial court is required to balance the burden of proposed discovery against the likely benefit." _Gill v. Gulfstream Park Racing Ass'n., Inc.,_ 399 F.3d

---

[2] These materials can be made available to the Court under seal upon request.

391, 400 (1st Cir. 2005) (citing *In re Sealed Case (Medical Records),* 381 F.3d at 1214–17;

*Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Bruno &*

*Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 596–97, 599 (1st Cir.1980)).

Rule 26(b)(5)(B) expressly provides that materials produced that are subject to

discovery protections and privileges may be ordered to be destroyed and/or returned.

Here, the confidential interview notes should be destroyed and/or returned because

(A) they are protected by the self-critical analysis privilege, (B) the are protected by the fair

reporting privilege, and (C) they are otherwise confidential and should be protected from

disclosure.

## A.   THE INTERVIEW NOTES ARE PROTECTED BY THE SELF CRITICAL ANALYSIS PRIVILEGE.

The self-critical analysis privilege, also known as the self-evaluative privilege, "is

designed to protect the opinions and recommendations of corporate employees engaged in

the process of critical self-evaluation of the company's policies for the purpose of

improving health and safety." *In re Block Island Fishing, Inc.,* 323 F.Supp.3d 158, 160-61

(D. Mass. 2018) (quoting Felder v. Wash. Metro. Area Transit Auth., 153 F.Supp.3d 221,

224–25 (D.D.C. 2015)). "The privilege seeks to encourage candid self-criticism," and

"prevent[s] a 'chilling' effect on self-analysis and self-evaluation prepared for the purpose

of protecting the public by instituting practices assuring safer operations." *Id.* If these types

of analyses were subject to disclosure, it would "almost inevitably ... result in some

cramping of the investigative process, simply because the incentives for any institution to

engage in self-evaluative investigation pale considerably with the knowledge that the

results may be used against it." *Id.* Thus, the "reasoning behind this approach is that the

ultimate benefit to others from this critical analysis of the ... [accident] far outweighs any

benefits from disclosure." *Id.*

Here, the interview notes fall squarely within the self-critical analysis privilege and should be kept from discovery.  In essence, Steamship Authority employees were instructed to speak candidly to HMS Consultants *in confidence* for the specific purpose of critically analyzing specific problems occurring within Steamship Authority operations during the 2018 season.  Allowing dissemination of these interview notes will not only contravene the advisement to Steamship Authority personnel that their statements were made in confidence, it will by definition create a chilling effect and discourage institutions such as the Steamship Authority from critically evaluating its processes.  Accordingly, a Protective Order should issue ordering the prompt destruction of these materials by Claimants' counsel.

## B.  THE INTERVIEW NOTES ARE PROTECTED BY THE FAIR REPORTING PRIVILEGE.

The fair reporting privilege allows those who fairly and accurately report certain types of official or governmental action to be immune from disclosing their sources of information to the public.  *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 595-98 (1st Cir. 1980).  The rationales behind the privilege are (1) reporters of such information are the "eyes and ears of the public" and (2) reporting accurately on the machinations of public agencies acts as a form of public supervision and "check" on public institutions.  *Howell v. Enterprise Publishing Co., LLC,* 455 Mass. 641, 655 (2010).

Although the privilege is frequently concerned with newspaper reporting, courts recognize affording this protection to *any person* who intends to use the fruits of the research to disseminate information to the public.  *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 714 (1st Cir. 1998) (extending fair reporting privilege to academic researchers and precluding production of confidential interviews).

Here, HMS Consulting was commissioned to provide a thorough review of the Steamship Authority, a *quasi*-public agency, concerning several incidents that occurred in 2018.  The purpose of the Comprehensive Review was to generate a public report to improve Steamship Authority operations.  The Comprehensive Review was commissioned, indeed, for the distinct purpose of providing such an objective account.  Given that the same policy rationales favor preclusion of HMS Consulting's confidential interviews from discovery as that as a newspaper, the fair reporting privilege should apply.  Accordingly, a Protective Order should issue requiring destruction of these confidential materials.

### C.  THE INTERVIEW NOTES ARE OTHERWISE CONFIDENTIAL AND PRIVATE.

Generally speaking, "personnel files contain perhaps the most private information about an employee within the possession of an employer," and information contained within employee personnel files are routinely precluded from discovery unless the requesting party can make a clear showing of relevance.  *Whittingham v. Amherst College,* 164 F.R.D. 124, 127 (D. Mass. 1995).  In this case, the information in the interview notes are *so private* that they are not even permitted to be in the Steamship Authority personnel files.

Disclosure of the employee interviews, which were made in confidence, clearly intrudes on the privacy of the interviewees and these materials should not be permitted to be disclosed.  This is more than just a theoretical concern and when balancing the equities, the Court should properly require the notes' destruction.

While the privacy concern is severe, the probative value of the notes is virtually nonexistent.  The interviews concerned events occurring in 2018 that have *nothing to do* with the above captioned lawsuit concerning a June 2017 event.

The notes themselves have no value as evidence because they manifest inadmissible hearsay.  Questioning witnesses about the interview notes exposes the Steamship Authority to claims from the interviewees that their privacy was breached.  In other words, it would be inappropriate to ask questions about the notes even from *other Steamship Authority personnel*.  The employees and other stakeholders were instructed to be candid and such opinions should not be revealed to their co-workers.

Although the Comprehensive Review was recent, plaintiffs' attorneys have already sought to admit such materials into evidence in personal injury cases involving unrelated events.  To date, this Court has properly precluded such evidence from trial as irrelevant, unfairly prejudicial, as subsequent remedial measures and as inadmissible hearsay.  ***See Case No. 17-10432-DJC, Docket No. 121, Order Granting Motion in Limine to Preclude Evidence of Comprehensive Review, attached hereto as Exhibit 4.***

<u>**CONCLUSION**</u>

For the foregoing reasons, the HMS Consulting interview notes are protected by (1) the self-critical analysis privilege, (2) the fair reporting privilege, (3) the fact that their probative value (none) does not justify disclosure of these confidential materials. Accordingly, the Court should properly grant the foregoing motion and issue a Protective Order requiring the destruction and/or return of these materials, and certification from counsel that they have done so.

By its attorneys,

**CLINTON & MUZYKA, P.C.**

*/s/ Olaf Aprans*

_____

**Thomas J. Muzyka**
**BBO NO: 365540**
**Olaf Aprans**
**BBO NO: 670434**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax#: (617) 720-3489
Email: oaprans@clinmuzyka.com

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 20, 2019

*/s/ Olaf Aprans*

_____

Olaf Aprans