**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ | ) |
| **COMPLAINT OF WOODS HOLE,** | ) |
| **MARTHA'S VINEYARD AND** | ) |
| **NANTUCKET STEAMSHIP** | ) |
| **AUTHORITY FOR EXONERATION** | )        Civil Action No. 17-CV-12473-NMG |
| **FROM AND/OR LIMIT OF LIABILITY,** | ) |
| **CIVIL AND MARITIME** | ) |
| _____ | ) |

**MARTINS, BARTONS AND DeLORENZO CLAIMANTS' OPPOSITION TO THE PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER FOR DESTRUCTION AND/OR RETURN OF CERTAIN CONFIDENTIAL MATERIALS PRODUCED IN THE HMS CONSULTING SUBPOENA RESPONSE [D.E. #124]**

Now comes the Martins, Bartons and DeLorenzo Claimants, in the above-captioned matter, and submits his Opposition to the Plaintiff's Motion for a Protective Order [D.E. #124]. For the Reasons more fully articulated below, the Court should deny the Plaintiff's Motion because the interview notes at issue are not subject to any of the privileges the Plaintiff invokes and fall fully within purview of discoverable materials under Fed.R.Civ.P. 26 (b).

**I.      BACKGROUND FACTS**

The Plaintiff in this action is a public instrumentality created and existing under the laws of Massachusetts. *See St. 1960, ch. 701 § 3*.  It provides ferry service to and from the Islands and is the "lifeline" for residents and tourists who depend on the Plaintiff for all commerce and transportation. *Pl.'s Ex 1, Docket Entry # 125-1, p. 11, at § 1.3*.  As an institution it is exempt from paying income tax and must exercise its powers "in all respects for the benefit of the people of the commonwealth." *St. 1960, ch. 701 § 6*.  Every year the Plaintiff is required to submit to the Governor a report with "a complete operating and financial statement covering its operations during the year." *Id. at § 13*.  Additionally, a complete and independent audit of its books must be made yearly and that audit is a public record.  *Id.*

In the spring of 2018, the Plaintiff experienced a series of high-profile disruptions to its ferry services, including the grounding of a passenger vessel, which resulted in large scale public backlash. *Pl.'s Ex 1, Docket Entry # 125-1, p. 7 at Exec. Summ*. The Plaintiff's governing board commissioned a comprehensive and independent review of its operations to mitigate public perception and to restore confidence. *Id.* The goal of the review was to identify any systematic or organizational problems which contributed to the incidents and to develop practical and effective solutions in order to restore public confidence in the institution. *Id., at p. 10, § 1.1*. Thus, the results of the review were intended to be public and were released in a document called the "Comprehensive Review of the Steamship Authority's Operations, 13 December 2018." *Id., at p. 2*.

The companies that performed this review obtained documentation from the Plaintiff and performed a site visit, which included interviews with a broad cross-section of the Plaintiff's employees. *Id., at p. 12, §§ 2.2 and 2.3*. The Plaintiff provided all the information for the review but did not participate in the analysis or forming the conclusions. *Id., at p. 11, § 1.4*. At issue in the Plaintiff's motion is the discoverability of certain notes made by employees of these outside reviewing companies during the interviews they conducted with the Plaintiff's employees.

## II.     ARGUMENT

The Plaintiff's motion should be denied because the material it seeks to have destroyed/returned is not subject to any privilege and is well within the ambit of discovery under **Fed.R.Civ.P.** 26 (b).

### 1.  *The Interview Notes are Not Protected by the Self-Critical Analysis Privilege*

The interview notes are not subject to the Self-Critical Analysis Privilege. That privilege

only protects a company's "opinions and recommendations" resulting from a critical "self-

evaluation." *In re Block Island Fishing, Inc.*, 323 F. Supp. 3d 158, 160 (D. Mass. 2018)

(Burroughs, D.J.).  Here the evaluation was performed by a third-party not the Plaintiff.  The

Defendant hired three outside and independent entities to perform a public review of their

operations and the Plaintiff did not participate in the analysis or conclusions.  The entire goal of

the comprehensive review was to make public the reviewers' "opinions and recommendations"

in order to restore public confidence in the Plaintiff's operations and management after a series

of disastrous events.

The Plaintiff is invoking the privilege to protect notes made by a third party, which

contain facts and personal opinions of the Plaintiff's employees about the Plaintiff's organization

and operations, including its procedures and policies.  The interviewed employees include a port

engineer, an operations manager, a terminal manager, vessel crewmembers, a procurement

officer, and maintenance personnel.  The self-critical analysis privilege, however, only applies to

"subjective impressions", not objective facts that also appear alongside self-critical analysis.  *Id.*,

at 162, *quoting*, *Felder v. Washington Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 225

(D.D.C. 2015).  Moreover, the privilege does extend to an employee's personal

impressions/opinions of company policies, procedures, or an incident's cause.  *See In re Block*

*Island Fishing, Inc.*, 323 F. Supp. at 164, *citing to*, *Hoffman v. United Telecomm., Inc.*, 117

F.R.D. 440, 442–43 (D. Kan. 1987) for the proposition that the "self-critical analysis privilege

did not prevent plaintiff from seeking testimony concerning witness's personal opinion."

Even assuming that the privilege may apply in this context, because the Plaintiff has

failed to provide the Court with a copy of the notes it is impossible for the Court to analyze

which portions are subject to the privilege and which are not covered as the expression of facts

and/or personal opinions of its employees.  For that reason alone the Plaintiff has failed to carry

its burden and establish that the self-critical analysis privilege applies and it is entitled to a

protective order requiring the wholescale destruction of the already disclosed notes.  That the

Plaintiff may have had an agreement with HMS Consulting to keep the interview notes

confidential or informed its employees they should speak candidly with HMS Consulting agents

because their statements would be held in confidence does not alter the rules of privilege.  The

notes are not covered under the Self-Critical Analysis privilege and the Claimants remain

entitled to the interview notes as they are relevant under **Fed.R.Civ.P.** 26 (b).  *See* *Section 3,*

*infra*.

> 2.   *The "Fair Reporting Privilege" Does Not Apply to the Interview Notes*

The Plaintiff cannot invoke the Fair Reporting Privilege and even if it could it is not a

privilege against disclosure of documents.  Massachusetts law recognizes, a fair reporting

privilege, which "is intended to ensure that publishers, most often news agencies or journalists,

can accurately report on official actions or statements of public interest free from the risk of

liability if the official document or action is itself defamatory." *Neelon v. Krueger*, 2015 WL

4576825, at *7 (D. Mass. July 30, 2015).  Neither the Plaintiff, nor HMS Consulting, are

journalists or professional news organizations, nor is there a claim that either has defamed

anyone by publishing the Comprehensive Report.  That privilege is simply not implicated here.

Rather, the Plaintiff appears to be invoking the First Amendment, and, in particular, one

of its corollaries which, under certain circumstances, can protect investigative reporters and

journalists from the compelled disclosure of confidential information used in writing their

articles.  *See* *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 714-15 (1st Cir. 1998); *Bruno &*

*Stillman, Inc. v. Globe Newsp. Co.*, 633 F.2d 583, 595–96 (1st Cir. 1980).  Despite the Plaintiff's

claim that the privilege is available to "anyone," the protection is rooted in the First

Amendment's freedom of the press clause and stems from the axiom that "without some protection for seeking out the news, *freedom of the press* could be eviscerated." (Emphasis added.) <u>Bruno</u>, 633 F.2d at 596, <u>*quoting*</u>, <u>Branzburg v. Hayes</u>, 408 U.S. 665, 681 (1972).

Again, however, neither the Plaintiff nor HMS Consulting are journalists or publishers in even the most liberal sense of the word. The Plaintiff, a ferry operator, hired HMS Consulting, a maritime consulting firm, to perform a comprehensive and public review of its operations, which it did by reviewing materials the Plaintiff provided it and by interviewing the Plaintiff's employees. HMS Consulting then compiled a report that it gave to the Plaintiff who then made its contents public. The First Amendment is simply not implicated in this matter.

### 3. *The Interview Notes Are Discoverable under Fed.R.Civ.P. 26 (b)*

The interview notes are relevant and discoverable under **Fed.R.Civ.P.** 26(b), which allows a party discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

This action arises from an allision that occurred when the Plaintiff operated its ferry vessel at approximately 35 miles per hour into a rock jetty, which had existed in its location since the 1800s. The Plaintiff claims that if its negligence (or the vessel's unseaworthiness) caused this allision the Plaintiff had no privity or knowledge of said negligence or unseaworthiness. While the Plaintiff has not disclosed the precise cause of the allision, the interview notes at issue contain employee descriptions and opinions regarding the Plaintiff's policies and procedures, from its fleet-wide vessel repair and maintenance protocols to the installation of navigation equipment and employee training, all of which may be used as evidence of the Plaintiff's privity and/or knowledge. The interview notes, in short, may be used to defeat the Plaintiff's claims for limitation and are thus relevant under **Fed.R.Civ.P.** 26(b).

Additionally, at this point it is important to understand the limited amount of discovery

obtained from the Plaintiff.  On December 10, 2018, the Claimants served their Requests for the

Production of Documents on the Plaintiff.  After lengthy discussions and correspondence the

Defendant served its partial responses on March 28, 2019, which the Martins, Bartons and

DeLorenzo Claimants have been unable to access because the provided USB drive containing the

documents was corrupted and inaccessible.  Moreover, after agreeing to run various search terms

through its "Maximo" management system, the Plaintiff has recently advised that it will only

perform one such search.  The Plaintiff has been lethargic and uncooperative during discovery

and now seeks to stonewall the Claimants from access to relevant documents that the Green

Claimants already obtained through a properly noticed and served subpoena.

The Plaintiff's claim that the material should be destroyed because prior to the interviews

it assured its employees that their personal observations and opinions would be held in

confidence misses the point.  The Plaintiff undertook a very public, independent review of its

organization and operations in an effort to regain the public trust.   It is a public instrumentality

that is subject to Massachusetts public records law and is no stranger to litigation.  It cannot

unilaterally determine what is subject to disclosure under Massachusetts Public record law and/or

the federal rules of civil procedure simply by making "assurances" to its employees.

Under the federal rules of civil procedure "pretrial discovery is normally to be 'accorded

a broad and liberal treatment.'"  _Herbert v. Lando_, 441 U.S. 153, 183 (1979), _quoting_, _Hickman

v. Taylor,_ 329 U.S. 495, 507 (1947).  **Fed.R.Civ.P.** 26 (c)(1)(G) allows the Court to issue an

Order covering confidential commercial information only "for good cause."  [G]ood cause must

be based on a particular factual demonstration of potential harm, not on conclusory statements."

_Anderson v. Cryovac, Inc._, 805 F.2d 1, 7 (1st Cir. 1986).

Even if the Court concludes that the interview notes, which the Plaintiff has not provided

to the Court, contain "confidential commercial information" under Rule 26 (c), the Plaintiff has

not met its burden of making a concrete demonstration of potential harm.  The Comprehensive

review was made public and contains much of the information in the interview notes, though not

the source of the information.  Moreover, any harm to the Plaintiff or its employees can be easily

cured by making the interview notes subject to a confidentiality order.  The liberal discovery

rules require that the Claimants be allowed to use this relevant information for purposes of

discovery and, if the Court concludes it is necessary, subject to disclosure restrictions with a

Confidentiality Order.

WHEREFORE, the Martins, Bartons and DeLorenzo Claimants respectfully requests that

the Court deny the Plaintiff's Motion for a Protective Order requiring the destruction/return of

the subject interview notes.

Respectfully submitted for
the above stated Claimants,
 by their attorney


/s/ Jonathan E. Gilzean
Jonathan E. Gilzean, Esq.
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
(617) 523-7394 (fax)
jgilzean@lattianderson.com


Dated: April 3, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (ECF) and paper copies will be sent to those indicated as non-registered participants on April 3, 2019.

/s/ Jonathan E. Gilzean
Jonathan E. Gilzean, Esq.
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
(617) 523-7394 (fax)
jgilzean@lattianderson.com